## BERRY *v.* OSBORN.

A special demurrer does not lie under our statute for any defect or want of form only, nor for any error or mistake, where the person and case may be rightly understood by the court.

A plea, which has *actio non*, in the place where it is usually said, the plaintiff his action ought not to maintain, will not be rejected, because those words are not English, but they will be regarded as merely insensible and rejected.

The abbreviation " &c." is English. It will not vitiate a plea on the ground that it is expressive of Latin words.

The usual introduction of a special plea is merely form. It may be struck out without destroying the plea.

Defective pleas may be amended by order of court, where there is merely such a defect or want of form, or such error or mistake that the person or case may be rightly understood without pleading.

THIS is an action of trespass *querœ clausum fregit*. It was commenced before a justice of the peace before whom the de-

fendant pleaded the general issue and six special pleas, alleg-
ing title, and thereupon the action was entered in the court of
common pleas, at the March term, 1852. The plaintiff de-
murred to the third, fourth, fifth and sixth pleas, and assigned
the following cause of demurrer to each, to wit: " For that
the said plea is not in the English language, but is partly
in the Latin tongue, contrary to the provisions of the stat-
ute." The pleas are alike, so far as relates to the questions
raised by the demurrers. The third plea is as follows:
" And for a further plea, by leave of the court, as to the
breaking and entering the close aforesaid, in the plaintiff's
declaration mentioned, and breaking the said part of said
fence, being ten feet in length, and breaking open the gate
aforesaid, the said defendant says that the said plaintiff
(*actio non,*) because, he says, that there is in Pittsfield
aforesaid a certain ancient messuage and close, bounded as
follows, to wit: southerly by a highway leading by the
dwelling-house of Ira D. Allen, westerly by the town line
of Loudon, northerly by the town of Barnstead, and east-
erly by land of John Thing, containing fifty acres, more or
less, whereof the said defendant, at the time when, &c.,
and long before was seized in his own demesne, as of fee;
and the said defendant, at the said time when, &c., and
long before, had and ought to have for himself, in the
winter months of each and every year, at his will, a way
of one pole wide, leading northerly from the highway lead-
ing from Potter's school-house, so called, in said Pitts-
field to Barnstead, in Pittsfield aforesaid, through the said
close in which, &c., to the highway leading by the dwelling-
house of the said defendant in said Pittsfield; in which he,
at the said time when, &c., and long before, had full right
and lawful authority to pass and repass, on foot and with
his cattle, sleds, and sleighs, by, to and from his said mes-
suage and said last-mentioned highway to the highway first
mentioned, and back, at his free will and pleasure, for the
improving, managing, occupying and enjoying his close or

messuage aforesaid; and because the said plaintiff had then lately and wrongfully erected said fence, and erected, closed, locked and fastened said gate in, upon and across said way, he, the said defendant took down and removed the same, as he lawfully might do: which are the same trespasses, as to the breaking and. entering the close in which, &c., and breaking down the fence and gate aforesaid, whereof the plaintiff declares against him; and all this he is ready to verify. Wherefore he prays judgment, if the said plaintiff, his action aforesaid, thereof against him, ought to have and maintain, and for his costs.

The questions arising upon the demurrers were transferred to this court for decision.

*Fowler*, for the plaintiff.

The demurrer should be sustained,—I. Because section 1 of chapter 182 of the Revised Statutes, expressly provides that " all writs, declarations, processes, indictments, answers, pleadings and entries, in the courts and before justices, shall be in the English language, and no other." In this case, the pleas demurred to all contain the Latin words " *actio non*," and quite a number of abbreviations of the Latin words " *et cetera*," all of which are in express violation of the provisions of the section of the statute quoted.

II. It cannot with justice be said that the Latin portions and the Latin abbreviations are immaterial, because if you strike them all out the pleas become entirely senseless. If they were immaterial, it would not avoid the positive requirements of the statute, the design of which was to free all records from just such barbarisms as are contained in these pleas.

III. These pleas would have been bad on general demurrer. Even admitting the Latin to be legal, it makes no sense, and leaves the plea unintelligible. Take the first Latin phrase and translate it into English, and there is still a substantial defect in the plea. " Action not " is no better sense

and no better substitute for " ought not to have or maintain his aforesaid action thereof against him," than the Latin words for which they stand. So nothing is gained by substi-tuting " and others " or " and the rest " for, &c., wherever these abbreviations occur.

The plea is, in any view of the question, substantially defective, incomplete, loose and uncertain to such a degree as to be bad on general demurrer.

As to all substantial defects, a special demurrer will be regarded as a general one, and the court will consider them in deciding the validity of the demurrer. 1 Ch. Pl. 642; 1 Saund. 337, b. n. 33; Tidd's Prac. 641; 2 Wils. 10; *Tucker* v. *Randall,* 2 Mass. Rep. 283; *Snyder* v. *Croy,* 2 Johns. 428; *Burnet* v. *Bisco,* 4 Johns. 235.

*Perley,* for the defendant.

1. *Actio non,* like many other legal terms, once Latin, has become Anglicised, and is practically and within the meaning of the statute, in the English language. It is per-fectly intelligible to any one who could understand the same words translated into English.

2. The words, standing by themselves, and without sup-plying what a lawyer might conjecture was understood, have no meaning, and cannot be regarded as making part of the plea. They are, in fact, no part of the plea, nor of any statement in it. The plea contains no allegation, either in Latin or in English, that " the plaintiff ought not to have or maintain his action." This customary and formal state-ment is omitted, and the plea and all the statements are in the English language. These two words have manifestly slipped in by accident from the forms in the books, and in those forms they are no part of the precedent, but a mere parenthetical suggestion of the place where the usual tech-nical statement should be inserted; they are nothing more in the plea; and no one that could understand the plea at all, would regard them as anything else.

3. *Actionem non*, or its English equivalent, is matter of form, and if wholly struck out, would leave the plea good in its substance, and sufficient on general demurrer; and the want of it not being shown for cause of demurrer, the plea is good without it. It may be, therefore, struck out as surplusage. When the surplus matter is struck out, it leaves the plea precisely as if it had never been there. Com. Dig. Pl. E. 12, 28; *Brown* v. *Dunrery*, Hobart 208; Co. Litt. 2036.

4. It is not necessary that, after the surplusage is struck out, it should leave the plea formally and technically correct. It is enough if the plea is left good in substance, unless the technical defect is shown specially for cause of demurrer. *Holbrook* v. *Judd*, 1 Root. 456, cited 3 U. S. Dig. 58, 593; *Wright* v. *Weisinger*, 5 S. & M. 210; 5 U. S. Dig. 544–512; *Boone* v. *Stone*, 3 Gilman 537, 7 U. S. Dig. 399, 58; *Johnson* v. *Killian*, 1 English 172, 9 U. S. Dig. 362–19; *United States* v. *Barkham*, 1 Mason 87.

BELL, J. " No writ, declaration, return, process, judgment or other proceeding in the courts or course of justice, shall be abated, quashed, or reversed for any error or mistake, where the person or case may be rightly understood by the court, nor through defect or want of form or addition only; and courts and justices may, on motion, order amendment in any such case. Rev. Stat. ch. 186, § 10.

Upon the just construction of this section depends the decision of the questions, which the ingenuity of counsel has seen fit to present to us. We do not feel that our time and labor are well bestowed either for the public good or the advancement of justice, in the examination of questions of this kind. And though we are aware that this court have again and again considered questions upon special demurrers, and decided them without especial reference to the provisions of this statute; and though this fact might justly lead to the belief that neither the court nor the bar had sup-

posed that any change was made by it in the practice usual in England; yet the calls too frequently made both upon our time and our patience, have led to a renewed and more careful examination of its provisions than we have heretofore made.

The principle of this section, that mere errors of form should be disregarded, is not new. Many statutes were long ago passed to remedy errors of this kind, formerly called the statutes of jeofails.

That now in force in England is the statute of 27 Eliz. ch. 5, 1 Ch. Pl. 640, which provides "that after demurrer joined and entered in any action or suit in any court of record, the judges shall proceed and give judgment according to the very right of the cause and matter in law shall appear unto them, without regarding any imperfection, defect or want of form in any writ, return, plaint, declaration, or other pleading, process, or course of proceeding whatever, except those only which the party demurring shall specially and particularly set down and express together with his demurrer."

A narrow construction was given to this statute, and by the statute 4 Ann ch. 16, (1713,) 1 Ch. Pl. 641, it was re-enacted, with the addition that "no advantage or exception shall be taken of or for an immaterial traverse, &c., omission of *vi et armis*," &c., (and so enumerating a large number of exceptions for defects of form,) "or any other matter of a like nature, except the same shall be specially and particularly set down and shown for cause of demurrer."

From these statutes has grown up the law and practice in England and the practice here, to assign defects of form specially as causes of demurrer, and the refusal of the courts to consider any formal exception, unless thus specially assigned.

The first of these statutes was passed in 1585, many years before the first settlements in New England. It may very probably have been regarded as the law here from the early

settlement, and have been handed down without question, notwithstanding the different language of our own statutes.

The section quoted from our own statutes is taken without change, except the insertion of the words " or addition," from the statute of 1791, § 3, (Laws 1815, p. 99.) And this, again, was taken, without material change, from the provincial statute of 13 W. III, passed 1701. Prov. Stat. 1771, p. 24. We have not succeeded in tracing it further. Its forms of expression indicate that the statute of Elizabeth was before the legislator who drafted it, but it was substantially and materially varied from it. The statute of Ann was passed some three years after, but is in no degree inconsistent with the provincial statute. In the latter, there is no reference to the course prescribed by the English statutes of special setting forth and showing matters of form by special demurrer, to make them exceptions to the otherwise general principle that no proceeding, in the course of justice, should be defeated by errors of form.

If the construction of this provincial statute and of the statutes founded upon it, were one which affected the titles of property, and a change might operate to produce injustice, we should decline, at this day, to look at it, and should leave to the Legislature to correct any evils which grew out of it; but it has no such relation to any rights of property. It concerns only the practice of the courts, over which this court has, by the general provision of our statutes, a very wide control. Rev. Stat. 171, § 9.

The effect of every decision, in cases of this kind, terminates with the case in which it is made, except as far as it may establish a rule in future cases. And as we have no reason to believe that any specific consideration has been bestowed upon the construction of this section, we have no hesitation in examining it now, and in following out the results to which such examination may lead us. If, upon consideration, it should seem there was any reason or room for doubts upon the soundness of any new impression we

should gain as to its effect, that would furnish a sufficient reason not to disturb the general impression.

But, upon a repeated and careful examination, we are unable to entertain the slightest doubt on the subject. The statute admits of but one meaning, and no exercise of critical ingenuity can give it any other. The current ideas on the subject, which hold that defects of form are fatal, if shown as causes of special demurrer, unless remedied by amendment, could never have been derived from this statute, and they are entirely irreconcilable and inconsistent with it. They have evidently been derived from the English statutes referred to, and have passed without challenge, and, therefore, without investigation.

" No writ, &c. shall be abated, &c., for any error or mistake, where the person or case may be rightly understood by the court, nor through any defect or want of form only."

This is a single sentence, distinct, clear and imperative. By no possibility can the usual understanding be interpolated, " except the same shall be specially and particularly set down and shown for cause of demurrer," by any mere construction. It contains no such exception. None such can be implied. If this statute provision is the law, as it has been three times enacted, and as it now reads, then no proceeding in the courts or course of justice can be abated, quashed or reversed for any defect or want of form, nor for any error or mistake, where the person or case may be rightly understood by the court, whether the defect be shown by a special demurrer or in any other way.

The final clause of the section affords strong support to this construction, because it proves that a different mode of remedying such defects was in the contemplation of the Legislature: " and courts and justices may, on motion, order amendment in any such case." The writ shall not be abated, the plea shall not be held insufficient for want of form only, or for errors or mistakes, which do not prevent the court from rightly understanding the case, but the court

Berry *v.* Osborn.

may order them to be amended. The result, then, of our investigation is, that no demurrer lies for mere errors of form, but the remedy, if the party desires to bring the subject to the notice of the court, is to move for an order that the defect be amended.

In the present case, this rule will be applicable or not, according as the matter complained of is properly to be regarded as matter of form or of substance. And as to this point two tests may be applied. We may see if the matter complained of constitutes any part of the allegations which constitute an answer to the action; and second, if the whole of the matter alleged to be wrong may be struck out without destroying the plea. Now the substance of the plea is, that there was a right of way, which justified the acts charged as a trespass. The part of the plea which is said to be defective, contains no fact which affects, in any way, this defence. The matters of fact, alleged in the plea, would be complete, and constitute, if admitted or proved, a defence to the action, if the plea had commenced—" And the defendant says that there is in Pittsfield a certain ancient messuage, &c. The introductory phrase that the plaintiff ought not to maintain his action, &c., is an immaterial and merely formal part of the plea, and if entirely omitted, the plea would not, under the statutes of Elizabeth and Ann, be open to any objection, unless it was specially shown as cause of demurrer.

It is objected that the words *actio non*, which are found in this introductory clause, are not in English, and for that cause the plea is bad. If this is so, and these objectionable words are, as is said, in Latin, they have a worse fault than that; considered as part of the plea, they are insignificant and insensible, and as such they are merely surplusage, which, according to the ordinary rule, does not vitiate. If they were significant, we think they are to be regarded as unintelligible and to be rejected; but if the residue of the plea is sufficient, it is not to be rejected, because it contains

such unmeaning and forbidden words. Any word is liable to be accidentally misspelled, so that it is unintelligible as English, and the plea will not be avoided, if enough remains to make a sufficient answer to the action, and the result will not be changed, if the misspelled English word happens to be a good word in some other language. It does not require a strong imagination to suppose the writer intended to write *the action does not lie,* and blundered so that what he did write was very unintelligible, but his whole plea, otherwise good, should not be rejected because of his mistake.

In this view, the defect in this case falls under another of the section 10. The introduction of the supposed Latin words *actio non* is obviously nothing but a mistake or error of the draughtsman of the plea in another respect. Instead of doing what the words *actio non* were probably, for brevity's sake, designed in some book of forms to remind him to do, that is, to insert the usual introduction of special pleas in bar, that " the plaintiff his action aforesaid thereof against the defendant ought not to have and maintain," the copyist transcribed the former words; now it requires no skill to see that this was a mere error and mistake, arising from ignorance or inattention. Can the case, notwithstanding, be rightly understood by the court? If it can, this blunder, however ridiculous it may be, is not to cause the plea to be rejected, but the court may order it to be amended.

It is also objected that the abbreviation " &c." is Latin, but we do not so consider it. We were early taught that its meaning is " and so forth," and though borrowed from the Latin, like many of the best words of the language, it has been naturalized in English for ages. Lord *Coke* has, in many places in his Commentary on Littleton, discussed what was intended by the &c.'s of his author, but it is no where suggested that the abbreviation is not English. It is every where introduced and explained in English reading-

books, grammars and dictionaries as an English abbreviation.

The exception taken is not that the plea is deficient in distinctness and precision, by reason of the omission of *the rest*, which this abbreviation is designed to indicate; but we have looked to see if this character, and all it is designed to indicate, were erased from the plea, a good defence, in substance, would still be left. Upon such examination, we think, this abbreviation may be omitted wherever it occurs, without impairing the defence.

Without reference to the construction of our statute, we should probably arrive at the same result in this case; that the causes of demurrer are insufficient, for the reasons assigned in the argument of the defendant's counsel; but the other ground is more satisfactory, as leading to a much preferable practice.

The demurrer, then, as it proposes to set aside the plea because of an error or mistake, where the person and case may be rightly understood by the court, and of a mere defect and want of form only, which is by law no cause of demurrer, must be overruled.

*Judgment for the plaintiff.*